NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

C.D., LAKESHA W., DE'ANDRE D., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, B.P., A.D., O.D., *Appellees*.

No. 1 CA-JV 17-0417
FILED 4-26-2018

Appeal from the Superior Court in Maricopa County
No. JS518025
The Honorable David M. Talamante, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant De'Andre D.*

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant Lakesha W.*

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant C.D.*

Arizona Attorney General's Office, Mesa
By Ashlee N. Hoffmann
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

---

**W I N T H R O P**, Presiding Judge:

**¶1**         De'Andre D. ("Father") and Lakesha W. ("Mother") (collectively the "parents") appeal the juvenile court's order severing their parental rights to C.D., born in 2002; A.D., born in 2005; B.P.[1], born in 2007; and O.D., born in 2012 (the "children").  C.D. also appeals the order, arguing severance was not in his best interest.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**         The parents first had contact with the Department of Child Safety ("DCS") in 2005, when they brought C.D. and their daughter D.D. to the Phoenix Children's Hospital after C.D. and D.D. consumed cocaine. D.D. ultimately died from her consumption of cocaine, and the parents were charged with manslaughter, a class 2 felony and child abuse, a class 3 felony.  Mother pleaded guilty and was convicted of both charges and placed on probation.  After a trial, Father was convicted on both charges and sentenced to prison.  DCS subsequently petitioned for dependency, alleging C.D. was dependent as to parents "due to substance abuse; medical neglect; neglect; unfit, hazardous home and failure to protect resulting in the death of one child and risk of physical harm to the other child."  The record does not provide any details as to why, but the dependency was eventually dismissed in 2007.

**¶3**         After Father's release from prison he was caught selling cocaine to an undercover police officer.  The officers arrested Father and found the children alone at a nearby McDonald's.  Father pleaded guilty to attempted sale or transportation of narcotics, and served a prison sentence from 2012 until shortly before the severance hearing in 2016.

**¶4**         While Father was in prison, O.D. was hit by a car when riding a bicycle without adult supervision.  O.D. was transported to the Phoenix

---

[1]         Father is B.P.'s legal, but not biological, parent.

Children's Hospital where he was treated for numerous internal injuries, underwent multiple surgeries, and remained in the hospital for one month. Following the car-bicycle accident, DCS petitioned for dependency, alleging the children were dependent as to parents on the ground of neglect. DCS additionally requested that the juvenile court find it was not required to provide reunification services due to the parents' former manslaughter convictions.[2] After a hearing, the court granted DCS' request and also found the children dependent as to parents.

¶5        DCS then moved to sever the parents' rights to the children based on neglect and their prior felony convictions.[3] To support these allegations, DCS primarily relied on the parents' felony convictions for manslaughter and the 2016 car-bicycle accident and resulting injuries to O.D. DCS alleged severance was in the children's best interests because it would allow them to live in a home free from abuse and neglect and because they were at risk of future neglect if they continued living with parents.

¶6        At the multi-day severance hearing a DCS case manager testified that Mother told DCS she was not present when O.D. was hit by a car. After speaking with Mother at the hospital, DCS went to check on the other children who were living with Mother and her then-boyfriend in a home with no furniture and minimal food. DCS took custody of the children after investigating Mother's boyfriend and finding that he had a criminal background and was a suspected sex offender. B.P. was not present when DCS initially took custody of the children because he had been living with his biological father for about one year.

¶7        At the hearing, the parents presented evidence from their marriage counselor that they were successfully completing therapy

---

[2]        DCS is not required to offer reunification services "if the court finds by clear and convincing evidence" that an aggravating circumstance exists: i.e., a parent committed a dangerous crime against children. Ariz. Rev. Stat. ("A.R.S.") § 8-846(D)(1)(d) (Supp. 2017) (We cite the current version of all applicable statutes because no revisions material to this decision have occurred.) Here, DCS proved parents were convicted of manslaughter of a child, a dangerous crime pursuant to A.R.S. § 13-705 (Supp. 2017). Thus, DCS was not required to provide reunification services.

[3]        DCS alleged additional grounds for severance, which are not at issue on appeal.

sessions. Mother's individual therapist also testified about Mother's ongoing treatment for drug abuse and treatment to help her overcome past trauma. Further, the maternal grandparents testified in support of Mother's and Father's ability to parent and care for the children and C.D. stated that he wanted to stay with parents because he thought he would be safest with them. Neither Mother nor Father testified on their behalf.

¶8 Following the hearing, the parties submitted written closing statements and the juvenile court took the matter under advisement. In its closing, DCS argued that the court should draw a negative inference from the parents' failure to testify, relying on *Melissa W. v. Dep't of Child Safety*, 238 Ariz. 115 (App. 2015). The court did so, and ultimately granted DCS' petition, severing the parents' rights to the children. The court additionally directed DCS to submit proposed findings of fact and conclusions of law, which DCS did by simply submitting/attaching the court's minute entry. The court then incorporated DCS' proposed findings of facts and conclusions of law, and its previous minute entry, in its final signed order.[4] The parents and C.D. timely appealed. We have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9; A.R.S. § 8-235(A) (2014); and Ariz. R.P. Juv. Ct. 103(A).

## ANALYSIS

¶9 We view the evidence in the light most favorable to sustaining the juvenile court's order and will only overturn the court's findings if not supported by reasonable evidence. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010). *See also Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 13 (App. 2011) ("The juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." (citation omitted)). Although parents have a fundamental right to raise their children as they see fit, that right is not without limitation. *Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 79, ¶ 14 (App. 2001). A juvenile court shall sever parental rights if it finds by clear and convincing evidence one of the grounds for statutory severance and by a preponderance of the evidence that severance is in the

---

[4] Father objects to the manner in which DCS submitted the proposed findings of fact and conclusions of law; however, Arizona Rules of Procedure for the Juvenile Court 66(F) does not require the level of formality Father urges. Instead, the rule focuses on the content required in those findings and conclusions, and the juvenile court's action here complied with the mandate of the rule.

best interest of the children. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000).

### I. Findings of Fact and Conclusions of Law

**¶10**      On appeal, the parents argue severance was improper because the juvenile court failed to provide specific findings of fact. In response, DCS argues the parents waived this claim because they failed to raise it before the juvenile court.

**¶11**    Generally, we "do not consider objections raised for the first time on appeal." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 452,      ¶ 21 (App. 2007) (citation omitted). This rule prevents parties from depriving the juvenile court of the opportunity to timely address matters of critical importance, only to then urge us to consider such matters on appeal. *Id.* Here, the parents failed to object to DCS' proposed findings of fact and conclusions of law before the juvenile court, and thus, have waived this argument on appeal.[5]

### II. Prior Felony Convictions

**¶12**      The parents next argue DCS cannot prove severance based on their 2005 manslaughter convictions because: (1) DCS previously dismissed a dependency action on this statutory ground; (2) over ten years have passed since their convictions; and (3) they have been actively engaging in self-improvement services.

**¶13**      A juvenile court may sever parental rights if DCS proves "[t]hat the parent is deprived of civil liberties due to the conviction of a felony if the felony of which that parent was convicted is of such nature as to prove the unfitness of that parent to have future custody and control of the child, including . . . manslaughter of another child." A.R.S. § 8-533(B)(4) (Supp. 2017). Our case law establishes that certain felonies, by their very

---

[5]      We note, however, that the juvenile court's findings of fact and conclusions of law incorporated DCS' allegations in its amended complaint—which allegations detailed the parents' manslaughter convictions and O.D.'s car-bicycle accident—thus, providing us sufficient detail to determine whether the court properly applied the law. *See Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 24 (App. 2012) (finding a juvenile court's findings of facts must be specific enough to allow this court to "determine exactly which issues were decided and whether the lower court correctly applied the law" (citation omitted)).

nature, render a parent unfit at the time the felony was committed. *See Matter of Juv. No. J-2255*, 126 Ariz. 144, 147 (App. 1980). There is no limitations period restricting the court's consideration of these past felony convictions. A parent, however, may rebut the presumption of unfitness that arises from a prior felony conviction "by showing actual fitness at the time of the hearing." *Id.* Here, the parents were convicted of manslaughter of a child, giving rise to the presumption that they are unfit to parent and that their parental rights should be severed pursuant to A.R.S. § 8-533(B)(4).

**¶14** We are unpersuaded by the parents' argument that DCS is "precluded" from bringing this severance petition based on the previous dismissal of the 2005 dependency action. The parents do not cite any Arizona case law recognizing preclusion in juvenile cases, and we decline to adopt such a rule here. Likewise, DCS is not barred from bringing this action even though the conviction occurred more than ten years ago. In finding that DCS properly brought this action, we next turn to whether parents rebutted the presumption of unfitness at the severance hearing. As noted above, weighing this evidence, and determining the credibility of the parties and witnesses is a function reserved for the trier of fact. We defer to that determination, and will reverse only if those determinations are not supported by reasonable evidence.

**¶15** At the hearing, the parents presented evidence that they were participating in marriage counseling and Mother's individual therapist testified about Mother's ongoing treatment for substance abuse. Additionally, the maternal grandparents opined as to both parents' ability to parent and care for the children. The parents, however, did not testify and did not present any evidence that they had taken parenting classes to learn how to better care for the children, or that they had undertaken any measures to ensure the children would be safe from the parents' drug use. The parents had the burden of rebutting the presumption of unfitness and, on this record, the court did not abuse its discretion or unreasonably determine that the parents failed to do so.[6]

---

[6] Because we find the juvenile court did not abuse its discretion in severing the parents' rights based on their prior felony convictions, we decline to address parents' arguments that severance was improper pursuant to A.R.S. § 8-533(B)(2). *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered

*III.    Best Interests*

**¶16**         The parents and C.D. argue that severance was not in the children's best interests.  To sever a parent's right to his child a juvenile court must find by a preponderance of the evidence that severance is in a child's best interest.  *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30 (App. 2010).  To meet its burden of proof DCS must show how a child will affirmatively benefit from the severance or that a continued relationship with a parent will harm the child.  *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004) (citation omitted).  Additionally, the mere "existence and effect of a bonded relationship between a biological parent and a child, although a factor to consider, is not dispositive in addressing best interests."  *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 12 (App. 2016) (citation omitted).

**¶17**         At the hearing C.D., who was fourteen at the time, told the judge that he wanted to remain with parents.  In addition to this statement, the juvenile court heard arguments and briefing on C.D.'s behalf from his *guardian ad litem*, and heard testimony from the maternal grandparents about both parents' bond with the children and ability to parent.  At the end of the hearing, the court ordered the parties to submit simultaneous written closing arguments focusing on whether severance was in the children's best interests.

**¶18**         After considering the written closing arguments and the evidence presented at the severance hearing, the juvenile court ultimately found that severance was in the children's best interests.  In its severance order, the court found that the parents' testimony would have aided the court in understanding the efforts the parents took to overcome their substance dependency and to better care for the children.[7]  In the absence

---

severance, we need not address claims pertaining to the other grounds." (citation omitted)).

[7]       On appeal Father argues only that (1) the juvenile court misapplied *Melissa W.* because the court did not notify him, prior to the close of the hearing, as to what evidence the court was lacking; and (2) because the court failed to properly apply the three-part test adopted in *Gordon v. Liguori*, 182 Ariz. 232 (App. 1995).  Father's argument lacks legal merit.  *Melissa W.* expressly rejected the three-part test adopted in *Liguori*, and instead held that a juvenile court may draw a negative inference from a parent's failure to testify as it relates to the determination of whether

of this information, the court found that the children could potentially be harmed if they remained in the parents' care and that the children were adoptable and currently in a potential adoptive placement—living with their maternal aunt.

**¶19**      The record reflects that the juvenile court considered the parents', C.D.'s, and DCS' positions and evidence regarding whether severance was in the children's best interests before finding that it was; and it is not our duty to reweigh the evidence. *See Christina G.*, 227 Ariz. at 234, ¶ 13.  On this record, the court did not abuse its discretion in determining severance was in the children's best interests.

**CONCLUSION**

**¶20**      The juvenile court's order severing parents' rights to the children is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

severance is in the child's best interest.  238 Ariz. at 116-17, ¶¶ 5-6.  Here, the court's negative inference was limited to the best interests' determination, and nothing in the record indicates that the court misapplied the standard announced in *Melissa W.*