IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

———————————————

MELISSA W.,
*Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY AND P.T.,
*Appellees*.

No. 2 CA-JV 2015-0053
Filed August 13, 2015

———————————————

Appeal from the Superior Court in Pima County
No. JD20130120
The Honorable Brenden J. Griffin, Judge

**AFFIRMED**

———————————————

COUNSEL

Richard Beck, Sahuarita
*Counsel for Appellant*

Mark Brnovich, Arizona Attorney General
By Cathleen E. Fuller, Assistant Attorney General, Tucson
*Counsel for Appellee Department of Child Safety*

———————————————

**OPINION**

Chief Judge Eckerstrom authored the opinion of the Court, in which
Presiding Judge Miller and Judge Espinosa concurred.

———————————————

E C K E R S T R O M, Chief Judge:

¶1        Melissa W. appeals from the juvenile court's order terminating her parental rights to her son P., born in May 2013, on mental illness grounds.  *See* A.R.S. § 8-533(B)(3).  She argues the court erred by drawing an adverse inference based on her failure to testify and because it "did not state the inferences made nor the weight given to such inferences."  We affirm.

¶2        The Department of Child Safety (DCS)[1] removed P. from Melissa's care in August 2013 because Melissa was refusing to comply with her prescribed medication to control her mental illness, and she was consequently suffering from severe paranoia and hallucinations.  She was later diagnosed with schizophrenia or, alternatively, psychosis induced by substance abuse.  Her delusions included a belief that she and her baby were robots; further, there was evidence that the baby was not removed from the crib for long periods and was developing cranial abnormalities.  DCS filed a dependency petition, and the juvenile court adjudicated P. dependent in February 2014.

¶3        The juvenile court changed the case plan from reunification to a concurrent plan of reunification and severance and adoption in September 2014, and DCS filed a motion to terminate Melissa's parental rights on mental illness grounds.  The court granted DCS's motion after a contested severance hearing at which

_____

[1]Child Protective Services (CPS) was formerly a division of the Arizona Department of Economic Security (ADES).  Effective May 29, 2014, the Arizona legislature repealed the statutory authorization for creation of CPS and for ADES's administration of child welfare and placement services under title 8, and the powers, duties, and purposes from those entities were transferred to the newly established DCS.  *See* 2014 Ariz. Sess. Laws 2d Spec. Sess., ch. 1, §§ 6, 20, 54.  Accordingly, DCS has been substituted for ADES in this matter.  For simplicity, our references to DCS in this opinion encompass both ADES and the former CPS, as appropriate.

Melissa did not testify.[2]  Citing, inter alia, *Gordon v. Liguori*, 182 Ariz. 232, 895 P.2d 523 (App. 1995), the court stated in its ruling that "the circumstances here warrant drawing an adverse inference against [Melissa] for choosing not to testify."  It observed that Melissa

> was in a unique position to explain whether and how she benefited from services . . . [and] could have explained . . . how her recent relapse would make her stronger in recovery; how it was her medication that was preventing her from visibly connecting with P[.]; why she decided not to continue with parent-child therapy; and whether . . . any parenting support from [Melissa]'s adult daughter was available and . . . how that support might have made it possible for [Melissa] to parent P[.]

This appeal followed.

¶4          In *Liguori*, we noted that "under limited circumstances" a trier of fact could "draw an adverse inference from the failure to present testimony."  182 Ariz. at 236, 895 P.2d at 527.  We identified three factors a court might consider:

> (1) whether the witness was under the control of the party who failed to call him or her, (2) whether the party failed to call a seemingly available witness whose testimony it would naturally be expected to produce if it were favorable, and (3) whether the existence or nonexistence of a certain fact is uniquely within the knowledge of the witness.

---

[2]The juvenile court previously had terminated the parental rights of P.'s unidentified father on abandonment grounds.

*Id.* (citations omitted). Melissa argues on appeal that the juvenile court's inference was inappropriate here because "[n]othing [she] could have testified about was within her peculiar knowledge, her testimony would have been opinion rather than fact, and [she] was available as a witness for the State and could have been called as a witness" by DCS.[3]

**¶5** The test articulated in *Liguori* addresses the situation in which a party fails to produce testimony—that is, a witness—to support his or her case. *See id.*; *Ponce v. Indus. Comm'n*, 120 Ariz. 134, 136, 584 P.2d 598, 600 (App. 1978) ("An adverse inference from the failure to call a particular witness should not be drawn unless the failure 'leads to a reasonable conclusion that the party is unwilling to allow the (fact finder) to have the full truth.'"), *quoting Ballard v. Lumbermens Cas. Co.*, 148 N.W.2d 65, 73 (Wis. 1967). We question whether this test should be applied when, as in this case, a party has declined to testify instead of merely failing to call a witness. The general rule in such circumstances is that a negative inference is appropriate and that no analysis of factors like those described in *Liguori* is necessary. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them . . . ."); *Fino v. Nodine*, 646 So. 2d 746, 751 (Fla. Dist. Ct. App. 1994) (inference permissible irrespective of availability of party to testify); *Simpson v. Simpson*, 209 S.E.2d 611, 614 (Ga. 1974) ("[A]lthough a person does have a right to invoke the privilege in a civil case in order to protect himself, when he does so, an inference against his interest may be drawn by the factfinder."); *Daniel v. Daly*, 31 N.E.3d 379, 388 (Ill. App. Ct. 2015) (permitting "negative inference that petitioner's failure to appear and testify was because petitioner would have offered testimony

---

[3]Melissa cites *Liguori* to support the position that whether the testimony would be fact or opinion testimony is a distinct factor that must be evaluated. Although the court in *Liguori* observed that "the testimony at issue here involves opinion, not fact," that was relevant to the court's determination that the third factor did not apply. 182 Ariz. at 236, 895 P.2d at 527.

detrimental to the success of his objection"); *Econ. Auto Salvage, Inc. v. Allstate Ins. Co.*, 499 So. 2d 963, 977 (La. Ct. App. 1986) (negative inference proper against party who fails to testify); *Labor Relations Comm'n v. Fall River Educators' Ass'n*, 416 N.E.2d 1340, 1344-45 (Mass. 1981) (applying inference despite burden of proof); *Nassau Cnty. Dep't of Soc. Servs. v. Denise J.*, 661 N.E.2d 138, 141 (N.Y. 1995) ("A trier of fact may draw the strongest inference that the opposing evidence permits against a witness who fails to testify in a civil proceeding.").

¶6        A juvenile court's drawing a negative inference when a parent fails to testify at a severance hearing is particularly appropriate.  A central issue at such hearings is whether severance of parental rights is in the child's best interests.  *See* § 8-533(B).  The answer to that question hinges to a large degree on the parent's present ability to successfully and safely parent the child.  *See id.*  We thus see little benefit in adopting an approach that would permit a parent to forgo, without consequence, testifying about his or her ability to parent or about other circumstances relevant to the court's determination.

¶7        Even if we agreed it was necessary for a juvenile court to evaluate the *Liguori* factors before it could draw a negative inference against a non-testifying parent in a severance proceeding, we find no error in the court's application of those factors here.  Although Melissa suggests the state could have called her to testify, she was not, as a practical matter, equally available to both parties because she was in the best position to anticipate the content of her testimony.  *See Kean v. Comm'r of Internal Revenue*, 469 F.2d 1183, 1188 (9th Cir. 1972) ("potential witness must be equally available both legally and practically" to avoid negative inference; party's "superior knowledge of the testimony that might be expected from" witness renders witness "not as available" to adverse party).  Nor is there any question that a parent would testify at a severance hearing if the testimony would be helpful to the parent's case.  *See Liguori*, 182 Ariz. at 236, 895 P.2d at 527.

¶8        Melissa's argument, however, focuses on the third factor—whether the witness can offer unique testimony about a particular fact.  *See id.*  As we noted above, the juvenile court found

that Melissa could have offered testimony concerning her participation in services or lack thereof, her substance abuse and relapse, the effect of her medication, and the availability of family support. Melissa points out that others could have or did testify about those topics. While accurate, this observation does not lessen the importance of Melissa's testimony about her ability to parent, which was the central issue in this proceeding. *See* § 8-533(B)(3). We find no fault in the court's determination that Melissa's perspective of the topics outlined by the court was material to that issue and uniquely within Melissa's knowledge. We therefore conclude the court did not err in drawing a negative inference based on Melissa's failure to testify.

¶9        Melissa next argues the juvenile court erred by not "stat[ing] the inferences made nor the weight given to such inferences." She further claims the court "placed upon [her] an und[ue] burden of proof" by enumerating several issues she could have testified about. Melissa has waived these arguments because she has not supported them with citation to relevant authority; therefore, we do not address them further. *See* Ariz. R. Civ. App. P. 13(a)(7)(A) (appellate brief must contain supporting legal authority); Ariz. R. P. Juv. Ct. 106(A) (Rule 13, Ariz. R. Civ. App. P., applicable to juvenile appeals); *City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, ¶ 88, 181 P.3d 219, 242 (App. 2008) (appellate court will not address issues or arguments waived by party's failure to develop them adequately).

¶10        We affirm the juvenile court's order terminating Melissa's parental rights.