NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ALBERT D., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, X.D., Z.D.,
*Appellees*.

No. 1 CA-JV 17-0505
FILED 5-22-2018

Appeal from the Superior Court in Maricopa County
No. JD 527402
The Honorable Teresa A. Sanders, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Nicholas Chapman-Hushek
*Counsel for Appellee, Department of Child Safety*

_____

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Jon W. Thompson joined.

_____

**B R O W N**, Judge:

**¶1**        Albert D. ("Father") appeals the superior court's order terminating his parental rights to X.D. and Z.D.  Because reasonable evidence supports the court's order, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

**¶2**        Father and Sarah S. ("Mother") are the biological parents of X.D. and Z.D. ("children"), born in 2010 and 2011, respectively.[1]  In February 2014, the Department of Child Safety ("DCS") took the children into temporary physical custody after receiving a report of physical abuse and neglect.[2]  Z.D. had unexplained injuries, including bruises on his forehead, chin, and face, and "long diagonal red marks on the top of his wrists."  DCS placed the children in foster care, where they remained during the proceedings.

**¶3**        DCS filed a dependency petition alleging Father was unable to parent the children, and after a hearing, the superior court found the children dependent as to Father because he was "unable to parent the child(ren) due to physical abuse and/or failure to protect from physical abuse, domestic violence, neglect, substance abuse and a prior dependency."  Although the court at that time approved the case plan of reunification concurrent with severance and adoption, the case plan was later changed to reunification, and finally to severance and adoption.

**¶4**        In August 2015, DCS filed a motion to terminate Father's parental rights, but by April 2016, Father had successfully completed all of the services DCS offered.  Father also obtained stable housing and

_____

[1]        Mother, whose parental rights to the children were terminated in April 2016, is not a party to this appeal.

[2]        For simplicity, references to "DCS" encompass the Arizona Department of Economic Security and former Child Protective Services.

employment. Although the case plan was not changed, DCS worked to reunify Father with the children, allowing him to progress from supervised visits to overnight visits. DCS also filed a motion to change physical custody of the children to father, which the court granted.

¶5        But an overnight visit in June 2016 resulted in a "[h]otline call," which reported an injury to Z.D. After this call, Father had only supervised visits with the children until October 2016, when the children refused to participate in further visits. DCS then offered a second psychological evaluation to see if Father needed additional services to assist with reunification but Father did not keep the scheduled appointments.

¶6        In January 2017, DCS filed an amended motion for termination based on the grounds of fifteen months' time-in-care, abuse, and neglect. The superior court held a contested severance hearing over a three-day period. The court subsequently granted DCS's motion to terminate Father's parental rights based on all three grounds and found termination was in the children's best interests. This timely appeal followed.

## DISCUSSION

¶7        To terminate parental rights, the superior court must find by clear and convincing evidence at least one statutory ground in Arizona Revised Statutes ("A.R.S.") section 8-533(B), and must find by a preponderance of the evidence that termination is in the children's best interests. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). We will affirm an order terminating parental rights if reasonable evidence supports it. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009). "[W]e view the evidence and reasonable inferences . . . in the light most favorable to sustaining the court's decision." *Id.* If we affirm one of the statutory grounds on which the juvenile court ordered termination, we need not address the other grounds. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002).

### A.        Statutory Ground

¶8        Under the fifteen months' time-in-care ground, DCS was required to prove that (1) DCS made diligent efforts to provide appropriate reunification services; (2) the children were in an out-of-home placement for at least fifteen months; (3) Father was unable to remedy the circumstances that caused the children to be in an out-of-home placement; and (4) a substantial likelihood existed that Father would not be capable of

exercising proper and effective parental care and control in the near future. A.R.S. § 8-533(B)(8)(c). In considering whether DCS proved this ground, the superior court was obligated to "consider the availability of reunification services to the parent and the participation of the parent in these services." *Id.* § 8-533(D). Below, we address only the first and fourth elements because those are the only elements Father challenges.

**¶9** As we understand his argument, Father asserts DCS did not make diligent efforts because a family reunification team was never implemented. However, Father has not directed us to any place in the record where he objected to the adequacy of reunification services based on DCS having allegedly failed to implement a family reunification team; he has therefore waived that argument.[3] *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178-79, ¶ 16 (App. 2014) (holding that a parent is precluded from challenging the diligent efforts finding on appeal when the parent does not object to the adequacy of the services in the superior court); ARCAP 13(a)(7)(B) (requiring appellant's opening brief to cite portion of record "where the particular issue was raised," and for rulings requiring an objection, where the objection is located in the record).

**¶10** Father next argues DCS failed to prove "that there is a substantial likelihood that he will not be capable of exercising proper and effective parental care and control in the near future." Father points to the adequacy of the services (such as stating DCS offered no services that would improve his ability to care for the children) and to his own testimony for support.

**¶11** Most of the evidence Father directs us to is simply conflicting evidence. *See Jesus M.*, 203 Ariz. at 282, ¶ 12 ("The resolution of such conflicts in the evidence is uniquely the province of the juvenile court as the trier of fact; we do not re-weigh the evidence on review."). Reasonable evidence supports the superior court's finding that a substantial likelihood existed that Father would not be capable of exercising proper and effective parental care and control in the near future.

**¶12** Father acknowledged the children were removed from the home in 2014 because of domestic violence, which, at times, occurred

---

[3] As to the family reunification team, Father testified DCS did not just offer a family reunification team but it actually provided one. Only after the overnight visit in June 2016, which resulted in injuries to Z.D., was the referral for the team withdrawn.

between Father and Mother and which the children witnessed. During one of the domestic incidents, Father "forcibly t[ook] [X.D.] out of [Mother's] arms because she had him in a headlock." Father testified he has moments where he struggles with controlling his anger, and sometimes has difficulty with aggression and violence.

¶13        Kimberly Tuttle, the DCS case manager who oversaw the case from February 2015 to August 2017, testified the children came into DCS's care because "[t]here was a domestic violence incident between [Father] and [Mother], in which [Z.D.] ended up with some unexplained injuries." Father had access to Z.D at the time Z.D. suffered the injuries, and both children witnessed the domestic violence between Father and Mother, which is a "frightening situation for a child." As to services, DCS had Father complete substance abuse testing and treatment; a psychological evaluation; counseling that included anger management, domestic violence, and past trauma components; and parent-aide, which involved individualized behavioral goals aimed, in part, at helping Father with domestic violence and positive discipline.

¶14        A licensed psychologist, Kathryn Menendez, reported in July 2014 that Father suffers from a personality disorder that includes aggressive behavior. Father had "demonstrated a pattern of neglect and poor supervision over his children," and "demonstrated a pattern of aggressiveness in the presence of his children which ha[d] resulted in their injury." Menendez diagnosed Father with "neglect of a child," which means he is a "perpetrator of child neglect."

¶15        Moving forward to 2016, Tuttle testified that the children had an overnight visit with Father in June 2016, but as a result of that visit, DCS received a hotline call "stating that the youngest child, [Z.D.], had a fist-shaped bruise in the middle of his back." Shortly thereafter, the children were interviewed; Tuttle observed an oval-shaped injury on Z.D.'s back and heard Z.D. state that Father hit him. Z.D. repeatedly stated, to Tuttle and others, that Father hit him, and has never indicated it was someone else. Z.D. refused to visit Father several months later, continuing to assert Father had hit him.

¶16        Based on various pieces of evidence, Tuttle opined that Father abused Z.D. and neglected both children. The children have "special needs" (Z.D. has autism and X.D. has ADHD). Because of his aggressive behavior and inability to cope with his aggression, Father would not be able to deal with the children's special needs, which require patience, understanding, and a calm demeanor. In other words, the children's special

needs combined with Father's aggression issues would put both children at risk of being abused by Father if placed in his care. Since the June 2016 incident, Father has reverted to how he used to be at the time the children were placed in out-of-home care. Father has apparently neither benefitted from any of the services nor demonstrated that he made the behavioral changes necessary to parent the children.

¶17 Regarding the June 2016 incident, a DCS report states that not only did Z.D. have a bruise on his back but he also had "a diaper rash" and "a bump on the top of his head" that was "swollen with pain." Z.D. "smelled like urine" and "didn't have a diaper on when [the foster family] picked him up." In response, DCS fully investigated the abuse and "found it to be substantiated."

¶18 Jacqueline Hess, a family nurse practitioner, performed a forensic medical examination of Z.D. shortly after he returned home from the overnight visit with Father in June 2016 and after the foster parents, who noticed "bruises on [Z.D's] back, arms and legs," had taken Z.D. to urgent care. Hess testified that "the pattern of bruises . . . on the back are concerning because of the way they were patterned" and because the back is "not a common area where a child would receive bruises just from playing." Z.D. told Hess, who had no reason to doubt Z.D.'s honesty, that "[Father] hit him on the back."

¶19 Christina Lebovitz, a clinical psychologist that interviewed the children and foster parents in December 2016, testified that Z.D. told her he was "mad and nervous about visits." X.D. "was scared to go to [Father's] house" and "said he saw [Father] hit [Z.D.] and hit [Mother]"; X.D. "thought that he might be hit also." A child suffers emotional or psychological abuse when that "child is a witness to a sibling or someone else being hurt." In her written report, Lebovitz explained that Z.D. told foster mother "that [Father] hit him during" two unsupervised overnight visits.

¶20 On this record, reasonable evidence supports the superior court's determination that a substantial likelihood existed that Father would not be capable of exercising proper and effective parental care and control in the near future. Although he completed most of the services, Father did not complete a second psychological evaluation or successfully care for the children during overnight visitations. The evidence also shows that Father was still violent and aggressive after participating in services designed to help him overcome these issues and become an effective parent, and that both children would suffer neglect and further physical or

emotional abuse if returned to his care. Simply because Father testified that he benefitted from the services and accepted responsibility for his actions, does not necessarily mean he is capable of properly and effectively parenting the children in the near future.

### B.    Best Interests

**¶21**    Termination of parental rights is in a child's best interests if he or she will "derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004). "In making the determination, the juvenile court may consider evidence that the child is adoptable or that an existing placement is meeting the needs of the child." *Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 288, ¶ 26 (App. 2011).

**¶22**    The superior court found that termination of Father's parental rights was in the children's best interests because the children were in a foster home that potentially could adopt them, were in the least restrictive placement, were adoptable, would "have permanency in a safe and stable home with parents that are able to meet all of their needs," and would be at risk for further abuse and neglect if placed with Father.

**¶23**    Father argues the superior court failed to "mention in its findings any of the testimony regarding the allegations of physical abuse by the foster placement," and that evidence, including Father's testimony, shows it would be in the children's best interest to be reunified with him.

**¶24**    Father's arguments are unpersuasive because he is merely asking us to reweigh the evidence or resolve conflicting evidence, which is not our role. *See Jesus M.*, 203 Ariz. at 282, ¶ 12. To the extent Father challenges the adequacy of the superior court's findings, this argument is waived because Father fails to cite supporting authority or explain why the court was required to issue specific written findings regarding the alleged abuse by the foster parents, especially when the court found the children would be in a safe home. *See Melissa W. v. Dep't of Child Safety*, 238 Ariz. 115, 117-18, ¶ 9 (App. 2015) (finding arguments waived because mother did not support the arguments "with citation to relevant authority").

**¶25**    Tuttle testified that severance and adoption was in the children's best interests, the current foster placement was the least restrictive and meeting the children's needs, the foster parents were willing to adopt both children, and the children were adoptable. The children would benefit from termination of Father's parental rights because they

would have a stable home, which "would really alleviate a lot of worries for these children." The children feel safe in their current placement.

¶26 Lebovitz testified that if the children returned to Father, they would experience "overwhelming anxiety and some further emotional damage." Joanne Mathlin, a DCS unit supervisor, also testified that severance was in the children's best interests. Therefore, reasonable evidence supports the superior court's finding that termination of Father's rights was in the children's best interests.

### CONCLUSION

¶27 For the foregoing reasons, we affirm the superior court's order terminating Father's parental rights to the children.

