NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

GEORGINA L.,
*Appellant,*

v.

LYNDA R., DEPARTMENT OF CHILD SAFETY, D.L.,
*Appellees*.

No. 1 CA-JV 20-0309
FILED 9-28-2021

Appeal from the Superior Court in Maricopa County
Nos. JS20322, JD37715
The Honorable Lori Bustamante, Judge

**AFFIRMED**

COUNSEL

Woodnick Law, PLLC, Phoenix
By Gregg R. Woodnick, Markus W. Risinger
*Counsel for Appellant*

Maricopa County Office of the Legal Advocate, Phoenix
By Kerri L. Chamberlin
*Counsel for Appellee Lynda R.*

Arizona Attorney General's Office, Tucson
By Dawn Rachelle Williams
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge David B. Gass and Judge Michael J. Brown joined.

---

**W E I N Z W E I G**, Judge:

**¶1**        Georgina L. ("Mother") appeals the termination of her parental rights to D.L. ("Child 4").  We affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        Mother and Lawrence ("Father") adopted four children in 2012, including Child 1, born in December 2006; Child 2, born in January 2006; Child 3, born in February 2005; and Child 4, born in June 2008 (collectively, the "Children").[1]

**¶3**        In October 2018, Child 1 confided to Mother that Father had sexually abused her, Child 2 and Child 4.  Mother did not report the abuse and continued leaving the Children alone with Father.  Several months later, in March 2019, Mother took Child 1 to meet a therapist.  Child 1 told the therapist that Father had sexually abused her, Child 2 and Child 4.  The therapist reported this abuse to DCS.  Child 1 and Child 2 were taken to ChildHelp for forensic interviews.  Before the interviews, Mother warned the siblings to be careful about what they said if they wanted to stay together.  Child 1 and Child 2 told the investigator that Father had sexually abused them.  Child 4 was not interviewed because of his intellectual disabilities, but Child 1 reported seeing and hearing Father sexually abusing Child 4.  Mother entered a safety plan that required her to protect the Children and separate them from Father.

**¶4**        In July 2019, DCS learned that Mother continued to allow contact between Father and the Children.  The juvenile court found the Children dependent as to Mother, removed them from her care and appointed a guardian ad litem ("GAL").

**¶5**        In January 2020, however, DCS moved the juvenile court to return Child 4 to Mother's physical custody under Arizona Rule of Juvenile

---

[1]    Father's parental rights have been terminated.  He is not a party to this appeal.

Court Procedure 59 because Mother had made the "necessary behavioral changes to get her children home." The GAL opposed the motion and petitioned to terminate Mother's parental rights to the Children because Mother had neglected or failed to protect them from neglect under A.R.S. § 8-533(B)(2). Additionally, the GAL alleged Mother failed to protect the Children from Father's willful abuse. *See* A.R.S. §§ 8-201(2), -533(B)(2).

**¶6** After a Rule 59 evidentiary hearing in February 2020, the juvenile court returned Child 4 to Mother, finding she had "fully and successfully participated in the reunification services offered," and concluding that "regardless of what happened in the past, the risk of harm to [Child 4] in Mother's care at this point is small." The court did not address the allegations that Mother knew about yet did not stop Father's abuse.

**¶7** In August 2020, the juvenile court held a contested severance hearing on the GAL's petition to terminate the parent-child relationship. The court heard testimony from several witnesses, including Child 1, Child 2, the therapist, DCS investigator and DCS case manager.

**¶8** The juvenile court terminated Mother's parental rights to Child 4 in September 2020, finding that Mother failed to protect the Children from Father's abuse under A.R.S. § 8-533(B)(2), that Mother "has placed or will place [Child 4] at unreasonable risk of harm in the future," and that termination was in Child 4's best interests. Mother timely appeals. We have jurisdiction. *See* A.R.S. §§ 8-235(A), 12-120.21, and -2101(A)(1).

## DISCUSSION

### I. No Issue Preclusion

**¶9** Mother first argues the juvenile court erred when it terminated her parental rights to Child 4 because the court's findings of abuse and neglect conflicted with the court's earlier risk-of-harm and best-interest findings after the Rule 59 hearing.

**¶10** Parental rights may be terminated if parents abuse or neglect their child, A.R.S. § 8-533(B)(2), or if parents permit another individual to abuse or neglect their child, *Sandra R. v. Dep't of Child Safety*, 248 Ariz. 224, 227, ¶ 13 (2020). To terminate parental rights under § 8-533(B)(2) over "children who exhibit no evidence of neglect or abuse," the court must find clear and convincing evidence "during the parental unfitness inquiry . . . that there is a risk of harm to those children." *Sandra R.*, 248 Ariz. at 228, ¶ 17.

**¶11** The doctrine of issue preclusion "precludes relitigating an issue of fact in a later case when, in a previous case, the same issue was actually litigated, a final judgment was entered, and the party against whom the doctrine is to be invoked had a full and fair opportunity to litigate." *Olesen v. Daniel*, 251 Ariz. 25, 30, ¶ 20 (App. 2021) (quoting *Crosby-Garbotz v. Fell*, 246 Ariz. 54, 55, ¶ 14 (2019)). Whether issue preclusion applies is reviewed de novo. *Crosby-Garbotz*, 246 Ariz. at 57, ¶ 9.

**¶12** Issue preclusion does not apply. First, the juvenile court expressly declined to address Father's abuse and Mother's failure to protect Child 4 from Father's abuse at the Rule 59 stage. The court addressed those issues only after the severance hearing, finding that Father abused the Children and Mother failed to protect them. Second, the GAL did not have "a full and fair opportunity to litigate" the risk of harm to Child 4. Third, even if the juvenile court found Child 4's risk of harm in Mother's care was "small" in early 2020, the court heard new and different evidence at a second evidentiary proceeding in late 2020 on whether to terminate the parent-child relationship and Mother did not testify. Nor did the juvenile court consider and resolve Child 4's best interest at the Rule 59 hearing. Rather, it found that "Rule 59(a) allows no best interests exception," and explained that "even if it is in a child's best interests to remain somewhere else, the court must order return if there is no substantial risk of harm." The juvenile court did not err.

## II. No Procedural Error

**¶13** Mother next argues the severance proceeding was an appeal of the juvenile court's findings from the earlier dependency proceeding. We are not persuaded. To begin, the GAL petitioned for termination of the parent-child relationship under § 8-533(A), which has no dependency requirement or phase. *See Kimu P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 39, 43, ¶ 14 (2008). And § 8-533(A) allows any person or agency with "a legitimate interest in the welfare of a child" to "petition for the termination of the parent-child relationship."

## III. No Abuse of Discretion

**¶14** Mother next contends the record does not support termination. "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). This court accepts the juvenile court's findings of fact on appeal unless "no

reasonable evidence supports those findings," and we will affirm a severance "unless it is clearly erroneous." *Id.* Although parents have a fundamental right to raise their children, "that right is not without limitation." *Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 79, ¶ 14. A court may terminate a parent's rights if one of several enumerated grounds for termination in A.R.S. § 8-533 is proven by clear and convincing evidence. A.R.S. § 8-537(B).

¶15        The record includes ample evidence to support the juvenile court's decision. The court heard testimony from Child 1 and Child 2. Both detailed the sexual abuse they suffered at Father's hands. Child 1 testified she saw Father sexually abusing Child 4. Child 1 also described Mother's inaction after Child 1 alerted her about the sexual abuse. Indeed, Mother continued to leave the Children with Father. And after DCS was alerted, Mother warned the Children to be careful about what they said because they may be "split up." The court also heard that Mother believed the Children were lying and that she continued allowing contact between Father and the Children after DCS directed her to prevent such contact. The juvenile court did not abuse its discretion.

## IV.    Negative Inference

¶16        Mother challenges the juvenile court's negative inferences from her failure to testify. We find no error.

> A juvenile court's drawing a negative inference when a parent fails to testify at a severance hearing is particularly appropriate. A central issue at such hearings is whether severance of parental rights is in the child's best interests. *See* A.R.S. § 8-533(B). The answer to that question hinges to a large degree on the parent's present ability to successfully and safely parent the child.

*Melissa W. v. Dep't of Child Safety*, 238 Ariz. 115, 117, ¶ 6 (App. 2015) (adding that there is "little benefit in adopting an approach that would permit a parent to forgo, without consequence, testifying about his or her ability to parent or about other circumstances relevant to the court's determination").

## V.    Factual Nexus

¶17        A juvenile court that "finds a parent unfit for neglecting or willfully abusing a child . . . may also find the parent unfit as to that parent's non-abused children" if "there is clear and convincing evidence that

previous abuse of a child supports a finding of risk of harm to non-abused children." *Sandra R.*, 248 Ariz. at 225, 230, ¶¶ 1, 26.

**¶18**         Mother first contends the record shows no factual nexus between Child 4 and the prior abuse and neglect of Child 1 and Child 2 because there "was no evidence that the father abused [Child 4]." That is incorrect. Child 1 testified that she saw Father "sexually touch[ing]" Child 4, which spurred her to report Father's abuse in the first instance.

**¶19**         Mother also argues "the likelihood of [Child 4] being abused is entirely mitigated" because Mother cut ties with Father and participated in services to improve her protective capabilities. But the juvenile court heard and rejected this argument based on reasonable evidence. *See Jesus M.*, 203 Ariz. at 280, ¶ 4.

## CONCLUSION

**¶20**         We affirm the juvenile court's termination of Mother's parental rights to Child 4.



AMY M. WOOD • Clerk of the Court
FILED:     AA

6