NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO K.C.

No. 1 CA-JV 24-0030
FILED 12-19-2024

---

Appeal from the Superior Court in Maricopa County
No. JD43112
JS21730
The Honorable Marischa Hope Gilla, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Office of the Public Advocate, Mesa
By Suzanne Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Ingeet P. Pandya
*Counsel for Appellee Department of Child Safety*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda L. Adams
*Counsel for Child*

---

**MEMORANDUM DECISION**

Presiding Judge Brian Y. Furuya delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge David D. Weinzweig joined.

---

**F U R U Y A**, Judge:

¶1        James C. ("Father") appeals the juvenile court's order terminating his parental rights to his child, K.C. He argues the court violated his due process rights by drawing an adverse inference from his decision to not testify at the termination hearing. For the following reasons, we affirm.

## FACTS[1] AND PROCEDURAL HISTORY

¶2        Father and Stephanie K. ("Mother")[2] are the biological parents of K.C., born on May 8, 2023. The Department of Child Safety ("DCS") became involved with this family upon learning K.C. had significant injuries due to suspected physical abuse or nonaccidental trauma. DCS and law enforcement officers interviewed the parents who provided conflicting stories and timelines regarding K.C.'s injuries. The court found K.C. dependent as to parents and DCS moved to terminate parents' parental rights under the abuse ground.

¶3        Meanwhile, law enforcement officers obtained text messages, photographs, and web search history from the parents' cell phones which revealed potentially incriminating information. Parents were arrested and charged with criminal child abuse.

¶4        While criminal charges were pending, the court held a three-day termination hearing. At the hearing, Father was called by DCS but declined to answer questions about K.C.'s injuries, asserting his Fifth Amendment rights. Mother testified she noticed marks and bruises on K.C. but when she asked Father about them, he belittled her or made her feel stupid for asking about them. She also testified Father hurt K.C. on multiple

---

[1]        Facts are viewed in the light most favorable to affirming the juvenile court's ruling. *See Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234 ¶ 13 (App. 2011).

[2]        Mother is not a party to this appeal.

occasions. A detective who investigated the abuse testified that based on all the evidence, including the photographs and text messages extracted from the parents' phones, he suspected Father had caused K.C.'s injuries. The court terminated Father's parental rights to K.C. under the abuse ground pursuant to Arizona Revised Statute ("A.R.S.") § 8-533(B)(2).

¶5 We have jurisdiction over Father's timely appeal under Article 6, Section 9 of the Arizona Constitution, A.R.S. §§ 8-235, 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

¶6 Father's sole argument on appeal is that the court improperly drew an adverse inference from his decision to not testify at the termination hearing because he was facing criminal charges based on the same allegations.

¶7 "We review the court's decision to draw a negative inference for clear error." *In re K.C.*, 1 CA-JV 23-0179, 2024 WL 1532698, at *2 ¶ 12 (Ariz. App. Apr. 9, 2024) (citing *Melissa W. v. Dep't of Child Safety*, 238 Ariz. 115, 117 ¶¶ 7–8 (App. 2015)). "A juvenile court's drawing a negative inference when a parent fails to testify at a severance hearing is particularly appropriate." *Melissa W.*, 238 Ariz. at 117 ¶ 6. In such hearings, the court determines whether severance of parental rights is in the child's best interests. *See* A.R.S. § 8-533(B). The inquiry focuses on the parent's present ability to successfully and safely parent the child. *See id.*

¶8 Here, the court found DCS had proven "by a preponderance of the evidence it would be in [K.C.'s] best interest to terminate Father's parental rights." In so doing, the court considered the parent-child relationship, the presence of abuse justifying termination, and K.C.'s adoptability. The court also found "Father did not testify" and that "[h]is failure to testify is deemed a factor against him." Nothing prohibits drawing such an inference, which is expressly authorized by law. *See Melissa W.*, 238 Ariz. at 117 ¶ 5 (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them . . . .")); *Montoya v. Superior Ct.*, 173 Ariz. 129, 131 (App. 1992) (trial judge may draw negative inference from father's invocation of Fifth Amendment).

¶9 Father counters that he was "forced to choose between two rights," and the court "penalized" him for exercising his privilege against self-incrimination, violating his due process rights. We disagree.

**¶10**      A witness may claim a Fifth Amendment right against compulsory self-incrimination in any proceeding. *See Ming T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 79 ¶ 13 (App. 2001). But the right against self-incrimination does not immunize a person from all consequences in all cases. As relevant here, in civil litigation—like the termination proceedings at issue—courts may properly draw an adverse inference from the invocation of that right. *See Baxter*, 425 U.S. at 318; *Wohlstrom v. Buchanan*, 180 Ariz. 389, 391 n.2 (1994) ("[I]n civil cases, fact finders are entitled to draw negative inferences against those who assert Fifth Amendment rights against self-incrimination."). Such negative inferences are not penalties for invoking the Fifth Amendment right and do not share the punitive characteristics or purposes of penalties, like striking of pleadings, entry of default judgment, or imposition of sanctions. *See Montoya*, 173 Ariz. at 131.

**¶11**      Father correctly observes that cases involving termination of parental rights involve a constitutional right—the "fundamental liberty interest of natural parents in the care, custody, and management of their child." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). Yet, when it comes to proceedings to discern and protect the best interests of the children involved, there is "little benefit in adopting an approach that would permit a parent to forgo, without consequence, testifying about his or her ability to parent or about other circumstances relevant to the court's determination." *Melissa W.*, 238 Ariz. at 117 ¶ 6. We discern no error in the court's drawing of a negative inference.

## CONCLUSION

**¶12**      We affirm.

