NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO S.B.

No. 1 CA-JV 25-0198

FILED 06-03-2026

Appeal from the Superior Court in Maricopa County
No.  JD536153
The Honorable Jay M. Polk, Judge

**AFFIRMED**

COUNSEL

Maricopa County Office of the Public Advocate, Mesa
By Seth Draper
*Counsel for Appellant Mother*

Arizona Attorney General's Office, Tucson
By Toni Valadez-Kozub, Marika J. Hodge
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge Michael S. Catlett and Judge Angela K. Paton joined.

—————————————————————

**P E R K I N S**, Judge:

¶1 Jade S. ("Mother") appeals from the juvenile court's December 2025 order terminating her parental rights to Sara (a pseudonym). The juvenile court also terminated the parental rights of Sara's father, Semaj B., by separate order in October 2025, but he did not challenge the termination and is not a party to this appeal. Because Mother has not shown the court erred, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 At the time of Sara's birth, in September 2024, Mother tested positive for fentanyl, amphetamines, and methadone. The Department of Child Safety ("DCS") arranged for Mother to be discharged with Sara under an in-home safety plan involving another adult supervising her contact with Sara while Mother participated in substance abuse treatment.

¶3 For the next two months, Mother continued to use substances and did not meaningfully engage in services. Between September 2024 and December 2024, Mother drug tested six times, each time positive, including for fentanyl, amphetamines, cocaine, methadone, and THC. She last tested in December 2024, missing at least 85 opportunities to test between September 2024 and August 2025.

¶4 By October 2024, DCS had determined the in-home safety plan was no longer appropriate, so it removed Sara from Mother's custody and petitioned for dependency.

¶5 In December 2024, Mother pleaded no contest to the dependency petition. The juvenile court adjudicated Sara dependent as to Mother and approved a case plan of family reunification. DCS continued to offer Mother reunification services, substance abuse treatment, drug testing, supervised parenting time, transportation, and case management, but Mother did not participate in substance abuse treatment with any provider. She reported to DCS that she intended to enter a detox center but never did. In March 2025, she began but never finished the intake process at an inpatient program.

¶6 Mother also mostly ignored the other reunification services, never responding to outreach efforts to help her with parenting and housing resources. Her first two referrals for supervised parenting time were closed because she cancelled or rescheduled visits or did not respond

to the visit supervisor. On her third referral, in June 2025, she attended some of the visits but often arrived late or appeared intoxicated.

**¶7**        In July 2025, the juvenile court changed the case plan to severance and adoption, and in August, DCS moved to terminate Mother's parental rights on substance abuse and six-months out-of-home placement grounds. *See* A.R.S. § 8-533(B)(3), (8)(b). Two weeks later, Mother was arrested for possession of methamphetamine and attempting to sell fentanyl to an undercover police officer. She pleaded guilty to possession of narcotics and drug paraphernalia in September 2025 and was sentenced to 180 days in jail with credit for 56 days already served.

**¶8**        In November 2025, the juvenile court held a contested termination hearing. That morning, the sheriff's office filed a disciplinary report, notifying the court that Mother refused to be transported to the hearing. After considering this report, the court found Mother failed to appear without good cause and proceeded in her absence.

**¶9**        The DCS case manager testified that before her arrest Mother did not engage in any substance abuse treatment and admitted to using "the usual stuff," but noted Mother began virtual visits with Sara in jail and completed a workbook on substance abuse and relapse prevention. The case manager also testified that Sara's foster family was meeting all of her needs and wanted to adopt her, opining adoption would be in Sara's best interests and give her permanency.

**¶10**        Due to Mother's recent involvement in services, DCS withdrew the six months out-of-home placement ground at the hearing. The court then made findings on the record and concluded that DCS proved the chronic substance abuse ground by clear and convincing evidence and that termination was in Sara's best interests. In December 2025, the court entered a final order terminating Mother's parental rights.

**¶11**        Mother timely appealed. Ariz. R.P. Juv. Ct. 603(a)(1)(A). We have jurisdiction. A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

**¶12**        To terminate a parent-child relationship, the juvenile court must find by clear and convincing evidence that a statutory ground for termination exists, *see* A.R.S. § 8-533(B), and by a preponderance of the evidence that termination is in the child's best interests, *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 477, ¶ 20 (2023). We will accept the court's factual findings if supported by reasonable evidence and inferences and

affirm the court's legal conclusions on the statutory ground for termination unless clearly erroneous. *Id.* at 478–79, ¶¶ 30–31. We will not reweigh evidence or reevaluate witness credibility. *Maria G. v. Dep't of Child Safety*, 253 Ariz. 364, 366, ¶ 8 (App. 2022).

**¶13**     Mother argues the juvenile court abused its discretion by terminating her parental rights because the court's findings under the chronic substance abuse ground were not supported by Arizona law or sufficient evidence. *See* A.R.S. § 8-533(B)(3). She does not challenge the court's best interests findings, so we accept it and do not address it further. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 13 (2000).

## I.     The Juvenile Court's Negative Inference Was Not an Abuse of Discretion.

**¶14**     Mother argues that the juvenile court abused its discretion by drawing a negative inference based on her failure to drug test during the dependency because there was "no evidence or law to support" the court's finding.

**¶15**     We disagree. We previously affirmed juvenile court findings based in part on implicit negative inferences. In one case, the court concluded a mother's drug abuse would continue to impede her parental ability, citing her refusal to test during the dependency, along with her failure to engage in services, and other positive drug tests even after the case plan changed to severance and adoption. *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶¶ 20–21 (App. 2016). In another case, the court concluded a father's addiction would continue in the future, citing a two month period in which he did not submit to testing, along with his long history of substance abuse and failure to complete treatment despite knowing the case plan would change to severance. *See Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶¶ 27–29 (App. 2010). And we have explicitly endorsed the practice in three unpublished but persuasive decisions specifically involving the failure to test. *See In re E.V.*, 1 CA-JV 25-0122, 2026 WL 291092, at *3, ¶ 15 (Ariz. App. Feb. 4, 2026) (mem. decision); *Kara B. v. Dep't of Child Safety*, 1 CA-JV 21-0001, 2021 WL 2425907, at *3, ¶ 15 (Ariz. App. June 15, 2021) (mem. decision); *Megan M. v. Matthew M.*, 1 CA-JV 18-0105, 2018 WL 4208992, at *2, ¶ 10 (Ariz. App. Sept. 4, 2018) (mem. decision).

**¶16**     Relying on *Melissa W. v. Dep't of Child Safety*, Mother argues no reasonable evidence supports the negative inference because she did not refuse her last 18 drug tests but was incapable of testing due to her

incarceration. 238 Ariz. 115, 117, ¶ 6 (App. 2015) (adverse inference is proper when parent is in control of her participation but refuses to testify). But Mother missed 85 drug tests between the start of the in-home safety plan in September 2024 and her arrest in August 2025—evidence that adequately supports the juvenile court's findings. And the court only considered her pre-arrest failure to test, observing Mother "failed to meaningfully engage in services aimed at remedying her substance abuse" during "the ten months prior to Mother's current incarceration." Because the court's negative inference is supported by reasonable evidence, the court did not abuse its discretion. *See Brionna J.*, 255 Ariz. at 478, ¶ 30.

## II. Reasonable Evidence and Inferences Support the Juvenile Court's Findings Under the Substance Abuse Ground.

**¶17** To terminate parental rights under the chronic substance abuse ground, A.R.S. § 8-533(B)(3), DCS must present clear and convincing evidence that (1) a parent has a "history of chronic abuse of controlled substances," (2) a parent cannot discharge parental responsibilities because of his or her chronic substance abuse, and (3) "there are reasonable grounds to believe that the [parent's] condition will continue for a prolonged and indeterminate period," *Raymond F.*, 224 Ariz. at 377, ¶ 15. Mother only challenges the juvenile court's findings as to the third prong. She contends that absent the negative inference, the court's decision "would have gone the other way" because of insufficient supporting evidence.

**¶18** We disagree. The negative inference was significant but not outcome determinative. It helped to establish Mother used substances in the 10 months leading up to her incarceration. But the record contains ample other evidence to support this finding. Mother tested positive for substances at Sara's birth and early in the dependency proceedings and admitted to a probation officer that she was "using cocaine monthly and methamphetamine and fentanyl daily leading up to her arrest." So the juvenile court could have reached the same conclusion without addressing Mother's failure to test.

**¶19** Mother finally argues the juvenile court erred by finding her engagement in services while incarcerated was "too little, too late" because she was "fully engaged in services within a year." She insists DCS must prove a parent failed to engage in services for "a period of years" before a juvenile court can make such finding.

**¶20** To decide whether the parent's substance abuse will continue for a prolonged indeterminate period, the juvenile court must consider

evidence of a parent's history of drug use and failure to engage in services. *Raymond F.*, 224 Ariz. at 378, ¶ 25; *Jennifer S.*, 240 Ariz. at 287–88, ¶¶ 21, 25. A parent's failure to abstain from substances despite awareness of pending termination proceedings is "evidence [the parent] has not overcome [the] dependence on drugs and alcohol." *Raymond F.*, 224 Ariz. at 379, ¶ 29. And when a parent "has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting." *Id.* at 378, ¶ 25.

**¶21**　　　　The juvenile court rightly commended Mother for beginning to engage in services while incarcerated but deemed the efforts "too little, too late" because "[d]emonstrating sobriety in a controlled environment such as a jail is vastly different than demonstrating sobriety outside of a controlled environment." The court also found her arrest "particularly significant" because Mother abused substances knowing that DCS had custody of Sara for about 10 months and had just moved to terminate her parental rights. The court concluded that "[g]iven the at least nine years that Mother has abused substances, her abuse during the duration of the case, including the more recent use in August 2025, there are reasonable grounds to believe her condition will continue for a prolonged indeterminate period of time." Mother's prior convictions on substance-related charges in Indiana back in 2016, her failure to demonstrate any sobriety before her incarceration, her failure to participate in treatment, and her arrest on drug charges two weeks after DCS moved to terminate her parental rights support the court's findings.

**¶22**　　　　In the termination order, the juvenile court relied on *In re Maricopa Cnty. Juv. Action No. JS-501568* to find Mother's participation in services was "too little, too late." 177 Ariz. 571, 577 (App. 1994). DCS concedes that case related to the withdrawn out-of-home placement ground, not the chronic substance abuse ground. The court's findings as to the out-of-home placement ground were superfluous, but not an abuse of discretion because the court supported its chronic substance abuse determination with other detailed findings. Because all of the court's findings were supported by reasonable evidence, we find no error. *See Brionna J.*, 255 Ariz. at 478–79, ¶¶ 30–31.

**CONCLUSION**

¶23        We affirm.



MATTHEW J. MARTIN • Clerk of the Court

**FILED**:       JR