NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

JOHN K., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, C.Z., *Appellees*.

No. 1 CA-JV 21-0027
FILED 3-29-2022

---

Appeal from the Superior Court in Maricopa County
No. JD33000
JS20472
The Honorable Karen A. Mullins, Judge *Retired*

**AFFIRMED**

---

COUNSEL

Law Office of H. Clark Jones, Mesa
By H. Clark Jones
Counsel for *Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Samuel A. Thumma joined.

---

**P A T O N,** Judge:

¶1        John K. ("Father") appeals the superior court's order terminating his parental rights to his son, C.Z.[1]  We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        C.Z. was born in January 2015 to Father and Selina Z. ("Mother") (collectively "Parents").  Mother is not a party to this appeal.

¶3        In August 2016, the Department of Child Safety ("DCS") removed C.Z. from Parents' custody and filed a dependency petition.  The petition alleged that Mother left C.Z. in Father's care even though his primary residence was known as an unsafe "drug house."

¶4        In June 2017, the superior court adjudicated C.Z. dependent and adopted a family reunification case plan.  DCS provided numerous services to Father, including substance abuse assessment and testing, drug testing, psychological evaluations, supervised visitation, parent aide services, a safety home checklist, and a list of resources to clean up his home.  Father completed substance abuse testing with no concerns and successfully completed the parent aide program.

¶5        Later in 2017, Mother ran Father over with a vehicle and he was hospitalized.  In spite of his hospitalization and recovery, Father completed numerous domestic violence and parent aide sessions and made house cleaning progress.  Father was later referred to a family reunification team to address his living conditions.  Father, however, failed to create a safe living environment for C.Z. and the service was terminated.

¶6        A psychologist evaluated and diagnosed Father with borderline intellectual functioning, past personal history of spousal/partner violence, physical adjustment disorder, and mixed anxiety

---

[1] We use initials to protect the child's privacy.

and depressed mood. The psychologist noted that Father's ability to minimally parent in the foreseeable future was "fair to guarded."

¶7            Father was referred for additional counseling to improve his home environment. He was also referred to, and participated in, parenting classes and a parenting support group. Father was referred for a neuropsychological evaluation, a psychiatric evaluation, and a second parent aide service, but did not participate because he was incarcerated.

¶8            Throughout the dependency, DCS coordinated visits between C.Z. and Father. During these visits, the case manager and Father discussed the home's condition, which did not improve despite DCS providing substantial home safety information to Father. When the case manager was present in Father's home, unknown individuals knocked on the door numerous times, but Father refused to answer.

¶9            In April 2019, police executed a search warrant at Father's home, revealing that Father possessed fake Percocet pills containing fentanyl. Approximately fifteen to seventeen unknown individuals were present in the home at the time of the search. Officers seized twenty rifles, heroin, methamphetamine, marijuana, and cash. They observed fecal matter and clutter completely covering the floor. Father was arrested and taken into custody. Father was released from custody but later taken into police custody again after failing to appear for the status conference in his criminal matter. In the interim, an undercover police officer purchased drugs at Father's home while Father was present. DCS provided Father visitation with C.Z. through video conference when he was in custody.

¶10            In late 2019, C.Z.'s placement was changed to a kinship placement with Mother's cousin. Reports indicated that Mother's cousin "provide[d] careful and sensible decisions that maintain [C.Z.'s] health, safety and best interests while simultaneously encouraging his emotional and developmental growth."

¶11            In April 2020, given Father's lack of progress and continued criminal activity, the court changed the case plan to severance and adoption. Around the same time, DCS filed a petitioned to terminate the parent-child relationship between Father and C.Z. under the fifteen-month out-of-home placement ground pursuant to A.R.S. § 8-533(B)(8)(c). The resulting adjudication was held over three days, ending in December 2020. After the superior court took the matter under advisement, it granted severance for both Mother and Father in January 2021.

¶12        Meanwhile, in December 2020, Father pleaded guilty to possession of a narcotic drug for sale, a class 2 felony, and attempted money laundering in the second degree, a class 4 felony, in his criminal case. The superior court informed the parties of its intent to take judicial notice of Father's two plea agreements. Father objected on the grounds that the severance trial concluded prior to his pleading guilty. The court sustained his objection and did not take judicial notice of Father's plea agreements when making its findings in the severance matter.

¶13        The court found that Father failed to provide C.Z. with adequate housing over the course of the four-year dependency and there was no evidence he would be able to do so in the foreseeable future. The court noted that "it was Father's own actions in allowing his prior residence to become manifestly unsafe" coupled with criminal activity at the home that "render[ed] him an unsafe parent."

¶14        Father timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

**DISCUSSION**

¶15        Parents' rights to raise their children as they see fit is fundamental, but not absolute. *Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 79, ¶ 14 (App. 2001) (citation omitted). To terminate parental rights, the court must find (1) by clear and convincing evidence one of the statutory grounds under A.R.S. § 8-533 and (2) by a preponderance of the evidence that termination is in the best interest of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). "The [superior] court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002) (citation omitted). As such, if the court's factual findings are supported by reasonable evidence, we will affirm its termination order unless such findings are clearly erroneous. *Minh T.*, 202 Ariz. at 78-79, ¶ 9 (citation omitted).

¶16        Father argues: (1) his purported rights under the Victims' Bill of Rights were violated, (2) the joint severance hearing violated his due process rights, (3) the superior court's proposal to take judicial notice of his two plea agreements violated due process, (4) reasonable evidence did not support terminating his parental rights under the fifteen-month out-of-

home placement ground, and (5) the superior court lacked sufficient evidence to find termination was in C.Z.'s best interest.

## I. The Victims' Bill of Rights does not apply here.

¶17        Father argues the Victims' Bill of Rights ("VBR") applies in civil proceedings generally and this proceeding specifically because he was a victim of Mother's criminal actions in a separate criminal proceeding. Father, however, is not a "victim" in this proceeding. The VBR defines "victim" as "a person against whom the criminal offense has been committed or, if the person is killed or incapacitated, the person's spouse, parent, child or other lawful representative, except if the person is in custody for an offense or is the accused." Ariz. Const. art. II, § 2.1(C); *see* A.R.S. § 13-4401(7), (19). The VBR references criminal, rather than civil, proceedings. *See* Ariz. Const. art. II, § 2.1(A)(3). A termination hearing is a civil proceeding. *Denise H. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 257, 259, ¶¶ 5-6 (App. 1998) (citation omitted). Although Father was a victim in the criminal prosecution of Mother for her actions in running him over, that status does not transfer to this separate matter. As such, no error occurred.

## II. Father's rights were not violated when the superior court held a joint severance hearing for Parents.

¶18        As an initial matter, Father never requested to sever his trial from Mother's in the adjudication and thus waived his claim. Even in a criminal case tried to a jury, as opposed to a juvenile case tried to the court, a party challenging a denial of severance "must demonstrate compelling prejudice against which the trial court was unable to protect." *State v. Cruz*, 137 Ariz. 541, 544 (1983) (citation omitted). The superior court has discretion as to whether to grant or deny a severance motion and such a decision will be preserved absent an abuse of discretion. *Id.* (citation omitted). "Although there is some possibility of confusion in a joint trial, in the interest of judicial economy, joint trials are the rule rather than the exception." *State v. Murray*, 184 Ariz. 9, 25 (1995) (citation omitted).

¶19        Father fails to show that the evidence against Mother caused him prejudice, as there was sufficient independent evidence presented against Father to support the superior court's findings. The court not only heard evidence regarding Mother and Father on separate days, but it also separated its findings for both parents individually in its ruling. Parents also had separate counsel representing them individually at the trial. The record shows that the superior court appropriately considered the relevant evidence regarding each parent separately and did not "commingle" its

findings. Accordingly, Father has not shown that the superior court violated Father's due process rights by holding a joint adjudication.

### III. The superior court did not improperly handle Father's plea agreements.

**¶20** Father next argues that his due process rights were violated when the superior court, after sustaining his objection, declined to take judicial notice of his plea agreements but included the information in a footnote for consideration on appeal. The superior court did not err by creating a complete record for our review.

**¶21** Father also argues that by mentioning the plea agreements in its decision, the superior court showed it was biased against him. Judges "are entitled to a presumption of honesty and integrity" and rebutting this presumption requires a showing of actual bias, as "mere speculation about bias is not sufficient." *Emmett McLoughlin Realty, Inc. v. Pima Cnty.*, 212 Ariz. 351, 357, ¶ 24 (App. 2006) (citation and internal quotation marks omitted). Importantly, a ruling is insufficient, by itself, to indicate partiality or judicial bias. *State v. Macias*, 249 Ariz. 335, 342, ¶ 22 (App. 2020) (citation omitted). We reject Father's speculative argument questioning the superior court's impartiality.

### IV. The superior court did not abuse its discretion in terminating Father's parental rights pursuant to the fifteen-month out-of-home placement ground.

**¶22** "[W]e accept the [superior] court's findings of fact if reasonable evidence and inferences support them, and will affirm a severance order unless it is clearly erroneous." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016) (citing *Michael J.*, 196 Ariz. at 250, ¶ 20). "To terminate parental rights pursuant to A.R.S. § 8-533(B) . . . a [superior] court must find by clear and convincing evidence that [(1)] a statutory ground for termination exists and [(2)] that the agency responsible for the care of the child has made a diligent effort to provide appropriate reunification services." *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 329, ¶ 18 (App. 2007) (citation and internal quotation marks omitted). "The court must also find by a preponderance of the evidence that termination is in the child's best interests." *Id.* (citing A.R.S. § 8-533(B)).

**¶23** The superior court may terminate a parent-child relationship under the fifteen-month out-of-home placement ground if DCS has made a diligent effort to provide appropriate reunification services and:

The child has been in an out-of-home placement for a cumulative total period of fifteen months or longer pursuant to court order or voluntary placement pursuant to [A.R.S.] § 8-806, the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

A.R.S. § 8-533(B)(8)(c).

**¶24**　　　　Father argues the record does not contain "competent" evidence regarding the condition of the home.  He asserts that the pictures of the home were not a true depiction of its condition because they were taken after the police search.  The record shows, however, that Father was repeatedly given opportunities to make his home safe for C.Z. but failed to do so.  As the superior court noted, Father's home became "more dangerous and hazardous over the course of the dependency proceeding."  The superior court was not required to accept Father's claim that he would have a safe environment to take C.Z. to following his incarceration, and in any event, we do not reweigh the evidence on appeal.  *See Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 351, ¶ 31 (App. 2013) (citation omitted).

**¶25**　　　　Additionally, Father argues that no criminal activity occurred when C.Z. was present.  Even assuming that were true, the record shows Father engaged in criminal activities throughout the dependency.  The superior court properly noted that "[t]he trajectory of Father's behavior has been consistently moving in the wrong direction" despite him knowing DCS was closely watching him.

**¶26**　　　　Father claims that he would have testified at trial had he known the superior court would draw a negative inference from his failure to do so.  The superior court, however, did not err in drawing such a negative inference, for "[a] central issue at [a severance hearing] is whether severance of parental rights is in the child's best interests."  *Melissa W. v. Dep't of Child Safety*, 238 Ariz. 115, 117, ¶ 6 (App. 2015) (citing A.R.S. § 8-533(B)).  An essential focus of such inquiry involves the ability of a parent to succeed in presently parenting the child in a safe manner.  *Melissa W.*, 238 Ariz. at 117, ¶ 6.  It would not be reasonable to "permit a parent to forego, without consequence, testifying" as to the parent's ability to parent.  *Id.*  Therefore, "[a superior] court's drawing a negative inference when a parent fails to testify at a severance hearing is particularly appropriate."  *Id.*

¶27        Terminating parental rights under A.R.S. § 8-533(B)(8)(c) also requires a showing that DCS made diligent reunification efforts. A.R.S. § 8-533(B)(8)(c); *see Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005) ("[T]he [superior] court must also have found that [DCS] had made reasonable efforts to reunify the family or that such efforts would have been futile.") (citation omitted). The superior court is to consider both the availability of the services and the parent's participation. *Id.* at 454, ¶ 16 (citation omitted). DCS need not provide an indefinite amount of time for remediation and "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *Tanya K. v. Dep't of Child Safety, P.K.*, 240 Ariz. 154, 157, ¶ 11 (App. 2016) (citation and internal quotation marks omitted).

¶28        While DCS is obligated to provide adequate reunification services, a parent seeking to challenge those efforts must timely object in the superior court if they believe the services offered are inadequate. *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178, ¶ 13 (App. 2014). Father failed to challenge the adequacy of reunification services in the superior court. Thus, he has waived this issue on appeal.

¶29        Waiver aside, Father's assertion that DCS failed to make adequate reunification efforts is not supported by the record. DCS provided numerous resources to Father over the years. Further, despite DCS's efforts to aid Father in remedying the home situation, the home's condition deteriorated. Father's participation in services, while notable, was ultimately unsuccessful. We find the superior court did not err in its determination that DCS made adequate reunification efforts.

¶30        Finally, C.Z. has resided in an out-of-home placement for fifteen-months or longer, as he has not resided with Father for more than four years. Accordingly, the superior court did not abuse its discretion in determining that a statutory ground for termination exists.

> **V.    The record supports the superior court's finding that terminating Father's parental rights was in C.Z.'s best interests.**

¶31        When a court reaches the best-interests analysis, it is presumed that the parent and child's interests diverge given that there has already been a finding, by clear and convincing evidence, that a statutory ground for termination is present. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 12 (2018) (quoting *Kent K.*, 210 Ariz. at 286, ¶ 35). As such, "[o]nce a court determines that a parent is unfit, the focus shifts to the

interests of the child as distinct from those of the parent." *Kent K.*, 210 Ariz. at 285, ¶ 31. If it will be beneficial to the child to terminate parental rights, or if the child will be harmed by continuing the relationship, then terminating parental rights is in the child's best interest. *Shawanee S.*, 234 Ariz. at 179, ¶ 20 (citation omitted). Providing the child with stability and security is a primary concern. *Alma S.*, 245 Ariz. at 150, ¶ 12 (citation omitted). Nonetheless, courts are not to disregard a parent's rehabilitation efforts when conducting the best-interests analysis. *Id.* at 151, ¶ 15. Courts must consider the totality of the circumstances in existence at the determination of severance. *Id.* at 150–51, ¶ 13 (citation omitted).

**¶32** The record contains sufficient evidence to support the superior court's finding that severance was in C.Z.'s best interests. C.Z. has been with his current kinship placement since November 2019. C.Z. is bonded with his placement and refers to her as "mom." Adoption is possible and would provide C.Z. with permanency. *See Demetrius L.*, 239 Ariz. at 3-4, ¶ 12 (citation omitted). Although the court noted Father's bond with C.Z., it was insufficient to overcome the evidence that it would be in C.Z.'s best interests to terminate Father's parental rights. *See Alma S.*, 245 Ariz. at 150, ¶ 12 (citation omitted); *see Demetrius L.*, 239 Ariz. at 3-4, ¶ 12 (citation omitted). The superior court did not err in determining that severance and adoption was in C.Z.'s best interests.

**CONCLUSION**

**¶33** We affirm.

